ANDRÉS CÁMARA, Plaintiff and Appellant, *v.* ÁNGEL RODRÍGUEZ y PÉREZ BÁRCENA and his wife, ETELVINA ALONSO, Defendants and Appellees.

No. 9664.  Argued April 9, 1948.—Decided July 9, 1948.

*José Sabater* for appellant.  *C. Ruiz Nazario* for Ángel Rodríguez y Pérez Bárcena defendant and appellee; *F. L. San Miguel* for Etelvina Alonso, defendant and appellee.

[3] Section 14 of Act No. 10 of 1917 amended by Act No. 17 of 1945, provides that: "No costs shall accrue in this class of suits."

114

MR. JUSTICE MARRERO delivered the opinion of the Court.

In an action brought, in the District Court of Mayagüez, by Andrés Cámara against Ángel Rodríguez Pérez Bárcena and his wife, Etelvina Alonso, to compel the execution of a deed, it was prayed that judgment be rendered declaring that the defendants sold to the plaintiff and the latter purchased from the former an urban property situated in Méndez Vigo Street, Peral Corner, Mayagüez, for the price of $40,000, of which the plaintiff paid $10,000 on account, and that upon the judgment becoming final (*firme*), both defendants be ordered to execute a deed of conveyance in favor of the plaintiff.

The defendants appeared separately and, after certain questions of law, which we deem it unnecessary to detail, were raised and decided, and after the corresponding answers were filed, the case went to trial and, at the close of plaintiff's evidence, both defendants filed separate motions for nonsuit. The lower court rendered judgment sustaining the said motions, whereupon the plaintiff appealed to this Court, and in support of his appeal he urges that the lower court erred in holding (a) that there was no proof to establish the status of Nicolás Vera as agent; (b) that the building sold was community property; and (c) in adjudging the plaintiff to pay attorney's fees.

Since a motion for nonsuit operates as a demurrer to the evidence, it is necessary to analyze the evidence herein in order to determine whether or not the lower court was justified in granting the motions presented in this case.

*Regino González* was called by Nicolás Vera one day and informed that the La Bolsa building was for sale for the sum of $40,000, and that his commission would be paid by the purchaser. He talked with the plaintiff and the latter told him that he was willing to purchase the said building for $40,000 and to pay him a 2½ per cent commission. At no time did he confer with the defendant Rodríguez. Nicolás Vera is acquainted with Rodríguez and

wrote several letters [1] to the latter, from whom he received on October 17, 1945, the reply which is copied below:

"Caguas, P. R., October 17, 1945

"Mr. Nicolás Vera
Mayagüez, P. R.

Dear Nico:

"I have your letters of the 11th and 13th, and I intended to answer them personally, as I was near that city, but it became late. However, next week, God willing, I will make a trip to that city with Tel and we can talk at length about the price of the properties, so that if we give some agent a chance we should clearly determine what he should earn as a commission, which is very important in order to avoid difficulties.

"Such as YOLANDE and LA HABANERA are, if we find a purchaser for them (without repairs of any kind), I consider that

---

[1] The letters written by Nicolás Vera to defendant Ángel Rodríguez on October 11 and 13 read as follows:

"October 11, 1945

"Mr. Ángel Rodríguez
Caguas, P. R.

Dear Ángel:

"In connection with the matter of the appraisal nothing specific has been accomplished yet, since these steps take time; but I have taken advantage of other complainants to cause our protest to reach the Treasurer.

"The protest from the taxpayers has been general, but I am afraid that the appraiser has instructions to raise the valuation and that is why he has been acting in that manner.

"I have told several agents regarding the sale but without reaching a definite price to make sure efforts for offers. It is necessary to give these agents a reasonable selling price, since they work on that basis for obtaining some profit from the transaction.

"It is unquestionable that we can not keep these properties with the marginal benefit remaining after paying the taxes; for example, La Habanera rents for $175 less $10 for the lot, that is $165. In accordance with the new appraisal of $38,820, and at the rate of $2.75 per thousand for taxes, it would amount to $1,064.55 annually. From the rent there would be a remainder of $915.45, equivalent to $76.29 monthly.

"It is not an easy matter to increase the rent, since the problem in Mayagüez is the need of dwelling houses but not of premises of this kind. I hope that you will give me the lowest price which we could reach with Yolande and La Habanera and, if you wish, of La Bolsa also in order that I may take steps with the agents. Of course, the price that I am asking you to quote is the one I will resort to at the last moment, since I will do everything in my power to obtain the largest possible profit.

the former is worth $20,000 and the latter $24,000. It is clear that if we do not obtain a reduction in the appraisal we could even modify the price, since according to the taxes which would have to be paid there would be no adequate return on said investment, and then if an increase in the rent cannot be obtained, it will be a matter of reducing the price. As to rent increases, I realize that there are not many concerns which can do it; but bearing in mind that Yolande, at least, could not find any other premises of that size, and that the removal of the machinery would cost them quite a bit of money, their rent could well be increased.

"La Bolsa now yields $325 as ·rent and, as I told the ap-

"I do not know how much rent La Bolsa yields to you, but, on an appraisal value of $45,000, you would have to pay the sum of $105.22 monthly.

"I hope that you will consider this matter and advise me as soon as possible, because you can not often obtain purchasers for this kind of properties, and if any should turn up we must hold him.

"Awaiting your prompt answer, I remain as always,

Very truly yours,
(Sgd.) Nico."

"October 13, 1945

"Mr. Ángel Rodríguez
Caguas, P. R.

Dear Ángel:
"A few lines to tell you that, after I sent my protest to the Treasurer in connection with the appraisal of La Habanera and Yolande, which are the ones to which I can refer, a brother of Attorney Ramos Antonini, Chief of the Internal Revenue came today to my house to obtain from me a sworn statement of what occurred between the appraiser and us regarding the appraisal and of the uselessness of our protest to the appraiser. As it may happen that this investigation may go on and possibly that they might come to see you, I am sending you a copy of my sworn statement in order that you may be informed.

"According to what Mr. Ramos told me, he is calling on other persons who have made protests and have been illtreated by the appraiser, among whom is Mr. Ángel Archilla Cabrera, a much respected person in our community.

"Regarding the treatment accorded to us by said gentleman, as you will see, I have not said anything.

"I assume that you have received my letter regarding the matter of the sale of the houses which I hope you will answer soon.

"Without any further advices to send you, for the present, and awaiting your answer, I remain

Very truly yours."

praiser, I would accept $40,000 in cash without any commission for the agent, said agent to get what he can from the purchaser.

"Up to the present, no one has come to investigate the matter of the appraiser, and in the event anybody should come, what you have stated will serve me as reference.

Thanks for your attention, and hoping to see you next week, I remain

Very truly yours,
(*Sgd.*) ÁNGEL RODRÍGUEZ."

After Vera received that letter, Rodríguez visited him and, as a result of the conversation they had, Vera concluded that Rodríguez was willing to sell for $40,000. He then called Regino González and told him to try to sell the La Bolsa building. When Regino informed him that Cámara was willing to purchase said building, he visited Cámara and afterward Cámara sent him $10,000 on account, which amount Vera deposited to his own name in Banco Crédito y Ahorro Ponceño and placed it at the disposal of Rodríguez. Afterward he called Rodríguez over the telephone at Caguas from the office of Attorney Moscoso and informed him that he had a purchaser for the La Bolsa building, without disclosing the name of such purchaser, and that Rodríguez authorized him to prepare the corresponding documents. In view thereof he gave instructions to Attorney Moscoso to prepare the deed of sale. Two days afterward Rodríguez called him on the telephone and informed him that the deal could not be carried out because his wife, codefendant Etelvina Alonso, did not wish to sell. *Mario Acosta* is an employee of Cámara, and took the $10,000 advance to Nicolás Vera. *Edgardo Delgado* is an employee of Banco Crédito y Ahorro Ponceño and knows of his own knowledge that Vera deposited in said bank to his own name the sum of $10,000. There is no indication that said sum is there at the disposal of defendant Rodríguez. *Guillermo H. Moscoso* is an attorney and notary, and it was from his office that the witness Nicolás Vera called the defendant Rodríguez. He did not know who was the person to whom Vera was talk-

ing, but he is certain that Vera told him: "Don Ángel says that you may prepare the deed." Vera referred to the La Bolsa building but the witness did not know who was the person at the other end of the telephone line. *Andrés Cámara* is the plaintiff. On November 6, 1945, at about 9 o'clock in the morning, Regino González went to his office and offered him the sale of the La Bolsa building for $40,000, he to pay Regino $1,000 as commission. He answered that he was willing to purchase said building. Later on Nicolás Vera and Regino called on him and he ratified his purpose to carry out the purchase. It was agreed that he would give Vera a $10,000 advance, which he did by delivering to the former that sum through his employee Mario Acosta. After it was agreed that the defendant Ángel Rodríguez would go to Mayagüez to sign the deed, Nicolás Vera visited him and told him that Rodríguez had desisted from the sale. At no time did plaintiff Cámara talk with Rodríguez or with the latter's wife, or enter into any agreement with them.

Such is the evidence for the plaintiff, at the close of which, as we have already stated, both defendants through their respective attorneys presented motions for nonsuit, and in addition defendant Etelvina Alonso stated that she would not introduce any evidence and that she prayed that judgment be rendered on the basis of said motions.

Section 1211 of the Civil Code, 1930 ed., provides that "No one can contract in the name of another without being authorized by him or without having his legal representation according to law" and that "a contract executed in the name of another by one who has neither his authorization nor legal representation shall be void, unless it should be ratified by the person in whose name it was executed before being revoked by the other contracting party." The said Code also provides that "by the contract of agency, a person binds himself to render some service, or to do something for the account or at the request of another," and that "in order to compromise, alienate, mortgage, or to execute any

other act of strict ownership, an express commission is required." Sections 1600 and 1604, respectively. Was Nicolás Vera authorized, or had he the legal representation of the defendant Ángel Rodríguez and his wife, to execute a contract for the sale of the La Bolsa building, and was there an express commission on the part of Rodríguez authorizing Vera to sell said building? We do not think so. In the letter of October 11, which has been copied verbatim in footnote 1, witness Vera told defendant Rodríguez of the increase in the appraisals of the properties and asked him to state the lowest price at which the Yolande and Habanera buildings could be sold, and added: "and, if you wish, that of La Bolsa also, in order that I may take steps with the agents." He further stated: "I do not know how much rent La Bolsa yields to you, but on an appraisal value of $45,000 you would have to pay the sum of $105.22 monthly." His letter of that date ends thus: "I hope that you will consider this matter and advise me as soon as possible, because you can not often obtain purchasers for this kind of properties, and if any should turn up, we must hold him." In the letter of October 13, which also appears in footnote 1, after Vera advised Rodríguez that he had sent his protest to the Treasurer in connection with the Habanera and Yolande buildings, Vera stated: "I assume that you have received my letter regarding the matter of the sale of the houses, which I hope you will answer soon." It was in answer to those two letters that the defendant Rodríguez, on October 17, 1945, wrote the one which we have already copied in full in this opinion. It will be noted that in it he acknowledged the receipt of Vera's letters of October 11 and 13, and stated that during the following week he would make a trip to Mayagüez and could talk extensively about the price of the property; that, as regards the Yolande and La Habanera buildings, he stated that "if we find a purchaser for them (without repairs of any kind) I consider that the former is worth $20,000 and the latter $24,000"; and that, as

to the La Bolsa building in controversy herein, he merely said: "La Bolsa now yields $325 as rent and, as I told the appraiser, I would accept $40,000 in cash without any commission for the agent, said agent to get what he can from the purchaser." Nothing further is stated about the La Bolsa building in said communication. And it does not appear therefrom that the defendant Rodríguez authorized Nicolás Vera in any way to offer the La Bolsa building for sale, much less that he expressly authorized him to carry out the alienation. The fact that Rodríguez stated in a letter that, as he had told the appraiser, he would accept $40,000 in cash is not equivalent to the express commission required by law for an alienation or the execution of an act of strict ownership, such as the sale of real property. That paragraph of the above-mentioned letter of October 17 may be interpreted as a mere argument adduced by Rodríguez before the appraiser in order that the latter should reduce the appraisal of the building in question. It is true that witness Vera testified that, apart from the said letter, the defendant Rodríguez visited him and that as a result of their conversation he reached the conclusion that the former desired to sell the La Bolsa building. However, he failed to specify the details of the conversation and why he reached the conclusion that he was authorized to sell the building in controversy herein; and, although he admitted that he collected the rents for the Yolande and La Habanera buildings, he stated that he never had administered the La Bolsa building, and in answer to the question, "But did you not ask him in your letter of October 11 if he was willing to sell the La Bolsa building?" he made the following statement: "No, not La Bolsa. Regarding La Bolsa I had not previously said anything to him."

Taking as a whole the oral and documentary evidence introduced by the plaintiff, and accepting it as true for the purposes of the motions filed, we reach the conclusion that the specific authorization or the express commission required

by law for Vera to sell the La Bolsa building is lacking. That being so, the plaintiff can not compel the defendant to sell him the property in question. We can very well repeat here what was said by this Court in *Maceira* v. *Pietri et al.*, 30 P.R.R. 545, 547, thus: "If the theory that the words and declarations of the agent would bind the principal were to be upheld, then every cook, every employee and every agent could hopelessly bind his employer. The agency must be proved by positive proof, or by a clear estoppel, and we find neither one nor the other in the record." See also *Ramos et al.* v. *López*, 36 P.R.R. 451, 453; and *People* v. *South Atlantic Fruit Co.*, 25 P.R.R. 620, 623. The first error assigned has not been committed by the lower court.

The evidence introduced by the plaintiff does not show that the wife of the defendant intervened in the transaction. However, in view of the conclusion we have reached in connection with the first error discussed, it is unnecessary to determine whether the property involved herein was separate or community property.

Regarding the third assignment, taking into consideration the evidence introduced, we think that the lower court did not err in adjudging the plaintiff to pay attorney's fees.

The judgment appealed from should be affirmed.

Mr. Justice De Jesús did not participate herein.